O’Neall, J.
Preliminary to the discussion of this case on the merits, it was contended : 1st. That the proceedings in the case of the administrator of Thomas M’Donald against his creditors were irregular, and that therefore the decree establishing the debts of the plaintiffs could not be regarded as a judgment. 2d. That the plaintiffs could not maintain this bill, inasmuch as they had not recovered judgments at law, sued out executions and pursued the estate of their debtor to insolvency. It will be necessary to dispose of these objections before proceeding to consider the case on the merits.
1. I had supposed that an administrator or executor had an unquestionable right, when they found any difficulty in the administration of the estate, to bring the whole matter with all the parties interested therein, v^ew °£ Equity,* and obtain its judgment for his guide. ' But it seems that doubts are entertained by counsel as to the correctness of this practice. ¡ Toller, in his law of executors, 455, relied on as authority in the argument of defendant’s counsel, says, “if the executor find the affairs of the testator so complicated as to render the administering of the estate unsafe, he may institute a suit against the creditors for the purpose of having their several claims adjusted by the decree of the Court.” This was not denied to be law, but a distinction was attempted to be made between executors and administrators ; the rule was conceded in the case of the former, but denied in the latter. There is, however, no such distinction, both have the same remedies, and both are properly accountable in Equity. I think, therefore, that the first objection cannot avail the defendant.
2. The general rule in Equity seems to be, that a creditor, to entitle himself to relief, must not only have recovered a judgment at law, but also must “ show that he has proceeded at law to the extent necessary to give him a complete title ” Brinkerhoff v. Brown, 4 J. Ch. Rep. 671; Screven v. Bostick, 2 M’C. Ch. Rep. 410. But this general rule applies solely to cases where the Court is called on to aid a creditor in furtherance of his legal remedy. It has no application where the Court is called on to aid a creditor in giving effect to its own judgment. There the only questions are, has the Court jurisdiction on the matters charged ? and without some further decree is the creditor without an effectual remedy ? In the language of Judge Nott, in the case of Bostick v. Screven, the plaintiffs must show that their decree “ cannot be enforced without the aid of the Court of Equity” against this defendant. They have undertaken to do this, and have I think succeeded. It appears from the proceedings had in the case of the administrator of Thomas M’Daniel, against the present complainants and others, creditors of the said Thomas, that their debts were established as simple contracts, and that the administrator had in his hands assets to the amount of $446.35 applicable to specialities. This is a judgment of the Court of Equity, entitling the plaintiffs to payment, but at the. same time declaring that ^ere were n0 *assets in the administrator’s hands for payment. It is analogous to a judgment at law, of assets guando acciderin on the plea of plene administravii. In such a case it would not be pre *207 tended that an execution would be necessary to complete the plaintiff’s title to relief in Equity. It is true there may be real estate, and if the bill was silent in that respect- it might constitute a reason why Equity should not interfere. But it is expressly alleged by the complainants and admitted by the defendant, that the whole real estate of Thomas M’Donald, before his death was sold at sheriff’s sale under execution, and titles executed to the defendant and his brother now deceased, and that the purchase money was paid by the said Thomas. According to this allegation and admission, there was no real estate of the said Thomas which could be made available by execution without the aid of this Court. The legal title was in the defendant, and the equitable title in the said Thomas. This, as well as the fraud in the title which the defendant derived from Charlotte M’Donald in the same land, and the fraud and the resulting-trust in the slave Rachel and her children, not only showed most satisfactorily that the plaintiffs could have no remedy by execution, but also that the' Court of Equity had jurisdiction of ■ the case, and was bound to relieve the plaintiffs if the fraud and resulting trusts were established.
This brings us to consider the right of the plaintiffs to have a decree made, declaring liable to the payment of the debts, 1st, the land, and 2dly, the slaves, Rachel and her children. As to the land, it is objected that the complainant has not prayed that the deed from Thomas M’Donald to Charlotte M’Donald, should be set aside. The fact that a party does not pray for the specific relief appropriate to his case, is no ground of objection to a decree in his favor, provided his bill contains a general prayer for relief, and the relief decreed arises out of the case made by the pleading. The bill sets out the sale and conveyance bf the land in dispute, by the sheriff of Lancaster District, for $50, to the defendant and his brother now deceased, and alleges the said consideration was paid by Thomas M’Donald, who was then deeply indebted; and prays that the said sale *and conveyance may be set aside, and the land be decreed to be sold for the payment of the debts of the said Thomas. The defendant admits this case of the complainants, and to avoid it sets up an antecedent conveyance of the land, by Thomas M’Donald, to his mother, Charlotte M’Donald — her will devising it to him for twenty years, and after that time to his children, of whom the defendant is the only surviving one. This defence of the defendant put the deed in issue, and it was necessary that this validity should be established, before he could derive any benefit from it. A formal reply . on the record to the defendant, has long been out of use in this State— the proof of the complainants must be regarded as in reply to the defence in the answer, and the charge of fraud, thus made out, the samé as if it had been formally replied, by a replication on file. In this view, it was perfectly competent to the Chancellor to make the decree which he did. But, in addition, it may be remarked, that the validity of the sheriff’s sale was very intimately connected with the legality of the defendant’s title, under the deed to MS’ grandmother. If that had been good, it would have interposed a serious obstacle to any relief against the sheriff’s sale. The prayer of the bill, for a sale of the land in satisfaction of the debts of Thomas M’Donald, covers every thing which may be necessary to be decreed to disencumber his title, and to subject the land to sale. In order *208 to make suck a decree, it was necessary that the defendant’s title, under Ms grandmother should be vacated.
As to the alleged fraud in that deed, I concur fully in the conclusion of the Chancellor. It is not indispensably necessary to establish fraud in a deed, as against the creditors, that it should be shown that the party was in debt at the time of its execution, or that it was executed with a view to future indebtedness. A deed is frequently avoided by proof of facts subsequent to its execution, showing that the sale was merely colorable. For if, notwithstanding an absolute sale, possession remain in the vendor, it is generally destructive of the conveyance. The retention of possession creates the inference that the sale was made upon a secret trust, for the use of the vendor. The fraud *consists in this, that the vendee permits him to hold himself out to the world as the owner of the property, and upon the faith of it, to obtain credit. The case before us, however, is accompanied by sufficient facts, at the execution of the deed, to render it void. The proof is, that the grantor was then in debt beyond the consideration paid, which was applied to the payment of his debts ; that from that time to his death, he continued in debt; and that at the sale it was agreed that he should retain possession daring his own life, and that it should then go to his own children. If the defendant could put his finger on any point of time from the execution of the deed to his father’s death, when he was clear of debt, he might well say that the old debts, which were paid off, ought not to affect the deed, and they would not. But he is unable to do this — and the subsequent debts, contracted in exoneration of preceding ones, are nothing more than a continuation of the antecedent indebtedness. Like a stone descending a mountain covered with snow, its bulk is increased every time it rolls over; but still every added particle is referable to the stone originally put in motion, as the cause of its adhesion to the aggregate mass. But if the grantor did not owe a single debt at the time of the execution of the deed, the agreement then made, that he should hold for life, and that his children should succeed him, shows that the sale was colorable merely, and upon an express parol trust for the grantor’s use. This (although I have no doubt the mother, to whom the deed was made, intended no moral fraud) was yet covin in law, and made the deed, as an absolute conveyance, void as against subsequent creditors without actual notice of it. The deed, too, was left with Mr. Massey for safe-keeping, and he did not deliver it over to the devisee of Mrs. M’Donald, until after the death of Thomas M’Donald. This is, in itself, another strong circumstance, indicating fraud. The deed deposited in the hands of a third person, might have been, and probably was, intended to be produced or suppressed, accordingly as exigencies might demand It is, however, unnecessary to pursue the evidence farther in detail; it is abundant to show, that according to familiar ^principles, this deed cannot be sustained as an absolute conveyance, and that the land is liable to the payment of the complainant’s debts. But I think that the consideration actually paid by Mrs. M’Donald, and applied td the debts of her son, ought to be refunded to her devisee, the defendant; and that in this point of view, the deed may be regarded as a Security for it. The proof is clear that she paid for the land a debt due by the son to her husband’s estate, of $300, and that the remaining $700 of the consideration were *209 also paid,' appears to be pretty clearly made out. Although the conveyance is contaminated by legal fraud, it does not appear that the grantee intended any actual fraud. In equity the parties are entitled, when they have acted without any intention to commit a fraud, to be put in statu quo. This is done by setting the deed aside, and refunding the money paid. No one can complain of this. The money paid was applied to the payment of debts, which were entitled to be paid out of the land and might have sold it. Boyd v. Dunlap, and others, 1 John. Ch. Rep. 478. But the money must be refunded without interest until the time at which the title is devested, and the defendant is ordered to acconut for rents and profits. For up to that time, the land is used in the manner and by the person in which and by whom the grantee directed and consented it should be used. The rents of the land, although received by her grantor, was, in point of law, received by her, as an equivalent for interest.
There can be no question about the negro woman Rachel and her children. Thomas M’Donald purchased and paid for them, and took a title to them in the name of his two sons. A trust resulted to him in favor of his creditors, and the property as against-them was as much his, as if he had taken the bill of sale in his own name. The defendant contends, however, that his father was indebted to him, and that the purchase was made in extinguishment of that debt. The nature of the indebtedness might seriously affect the conveyance, were it necessary to go into that question. For I am not prepared to say that a promise to pay an infant son *for his labor, by his father who is indebted, would constitute such a valuable consideration as would prevent a deed founded on it from being declared fraudulent. For at law the father is entitled to his services, and if he give up this right and promise to pay him for them, this, although it might be binding on him, would, as against his creditors, be purely voluntary, and would hardly be enough to support the deed. But, as I have already said, it is not necessary to pursue that inquiry any further. There is no evidence that the father bought and paid for the negroes in consideration and in extinguishment of his indebtedness to his son. The defendant says so in his answer, but this is in avoidance of the title which the law would imply in his father from the admission contained in the answer. Thomas M’Donald bought and paid for the negroes and took a title in the name of the defendant and his brother, as his answer admits. A trust resulted from these facts, to the said Thomas, in favor of his creditors, and the answer to avoid it alleges that he bought and paid for them in satisfaction of a debt due to the defendant. To sustain this allegation of his answer, the defendant was bound to prove an agreement that they should be so bought, or that they were accepted in satisfaction of the debt. In this he has failed. He has only proved that he overseered for his father some time previous to this purchase. How long he had so served him, or how much was really due, is uncertain. It is perfectly clear, however, that his father did not, and could not, owe a sum equal to the price of the negroes. The fact that they were conveyed to himself and his brother, shows that his father’s indebtedness to him could not have constituted any part of the consideration. I am satisfied, therefore, that the negroes must also be declared liable to the payment of the complainants’ debts.
The defendant must also account for the rents and profits of the land *210 and ferry, and tbe hire of the slave Rachel from the first of January, 1828; for the proof is that he received the crop of that year in which his father died, and that he has had possession ever since. Upon the death of his father, the crop, land, and slaves, were assets applicable to the payment of his debts ; and a receiver would, in such a case, have *keen appointed by the Court of Equity, until the decision of this case. It follows, that rents and profits and hire must be accounted for. In such account the defendant must be allowed credit for the sum of $1000, paid by his grandmother, Charlotte M’Donald, for the land, with interest thereon from the first day of January, 1828 ; and also for whatever sum was due to him by Thomas M’Donald at the time of his death for his services as an overseer. From this last item must, however, be deducted any sum which the defendant received from Thos. M’Donald, in either money or horses. If a balance on the whole account should be struck in favor of the defendant, then he must be paid such balance out of the sale of the land and negroes.
It is ordered and decreed, that so much of Chancellor De Saussure’s decree as conflicts with this opinion, be modified according to the principles hereinbefore stated, and in all other respects be affirmed.
Johnson and Harper, Js., concurred.